UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NATIONSTAR MORTGAGE, LLC,<br><br>                             Plaintiff,<br>     v.<br>SAHARA SUNRISE HOMEOWNERS ASSOCIATION, *et al.*,<br><br>                             Defendants.<br><br>AND ALL RELATED CASES | Case No. 2:15-cv-01597-MMD-NJK<br><br>ORDER |

## I.  SUMMARY

This dispute arises from the foreclosure sale ("HOA Sale") of real property located at 2670 Early Vista St., Las Vegas, NV, 89142 ("Property") to satisfy a homeowners' association lien. (*See, e.g.*, ECF Nos. 1 at 3, 90-9 at 2.) The Court previously granted partial summary judgment to Plaintiff Nationstar Mortgage LLC that the HOA Sale did not extinguish a deed of trust (the "DOT") encumbering the Property now owned by Nationstar (ECF No. 103 ("Summary Judgment Order")), but later found that the HOA Sale extinguished the DOT after the United States Court of Appeals for the Ninth Circuit vacated the Summary Judgment Order and remanded to the Court. (ECF No. 127 ("Mandate Order").) Then the Ninth Circuit also vacated the Mandate Order and again remanded to the Court to consider a broader range of arguments Nationstar presented. (ECF No. 133 ("Memo Dispo").) Before the Court is Nationstar's motion for summary judgment following the Memo Dispo.[1] (ECF Nos. 148, 150 (corrected image of motion, which the Court will reference herein and refer to as the "Motion").) Because the Court agrees with Nationstar

---

[1] Defendant River Glider Avenue Trust ("River Glider") filed a response (ECF No. 153) and Nationstar filed a reply (ECF No. 156).

that the HOA Sale was alternatively void under the excused tender doctrine or should be set aside under the equitable doctrine of judicial estoppel, and as further explained below, the Court will grant Nationstar's Motion.

**II.    BACKGROUND**

The Court incorporates by reference the factual background of this case as recited in the Summary Judgment Order, and does not repeat it here. (ECF No. 103 at 1-3.) The facts detailed therein regarding the DOT and the HOA Sale have not changed. However, the Court adds immediately below additional facts Nationstar presented in its Motion that are pertinent to the Court's discussion further below.[2]

The Early Vista Street Trust ("Early Vista") purchased the Property at the HOA Sale for $5,400. (ECF No. 150-13.) According to Matthew Lubawy, who performed a retroactive appraisal report on the Property, as of February 8, 2012 (the date of the HOA Sale), the market value of the Property was $84,000.00. (ECF No. 150-14.) Early Vista later conveyed the Property to River Glider for ten dollars. (ECF No. 150-15.)

Eddie Haddad manages River Glider along with the Early Vista Street Trust, and is their only employee. (ECF No. 150-16 at 11-13, 19-20.) Mr. Haddad does not dispute that he is a sophisticated real estate investor. (*Id.* at 11.) By 2016, Mr. Haddad had purchased somewhere between 50 and 1000 properties at sales like the HOA Sale. (*Id.* at 22.) Mr. Haddad was aware of the possibility of litigation with banks like Nationstar each time he purchased a property at sales like the HOA Sale. (*Id.*) Indeed, he said, "[i]f it's an NRS 116 sale and there happens to be a deed of trust, automatically I'd be inclined to bid less because of potential litigation costs." (*Id.* at 17.)

---

[2]River Glider does not dispute any of the facts described in this section, nor does it object to the admissibility or authentication of any of the exhibits from which these facts are taken. (ECF No. 153 at 3.) Nationstar also requests that the Court take judicial notice of exhibits A, B, C, E, F, G, H, I, J, L, M, O, Q, S, Y, Z, AA, BB, and CC filed with its Motion. (ECF No. 150 at 8.) As all of these documents are either recorded property records or court filings, the Court grants Nationstar's request and takes judicial notice of all of them. *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) ("We may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts.") (citations omitted); *Mulato v. Wells Fargo Bank, N.A.*, 76 F. Supp. 3d 929, 941 (N.D. Cal. 2014) (taking judicial notice of recorded documents regarding a property).

At the time of the HOA Sale on February 8, 2012 (ECF No. 150-13 at 2), Alessi and Koenig (the Sahara Sunrise Homeowners Association's agent)'s policy was to reject payments sent from Nationstar's predecessor-in-interest's Bank of America, N.A. ("BANA")'s (ECF Nos. 150-4 at 12, 150-5 at 2) counsel Miles Bauer (*see, e.g.*, ECF No. 150-24 at 2) to pay off superpriority liens held by Alessi and Koenig's clients (ECF No. 150-20 at 34-45). Indeed, that was Mr. Alessi's best recollection as to what happened with the Property. (ECF No. 150-21 at 2 (including the case caption for this case and identifying Mr. Alessi as Alessi and Koenig's Fed. R. Civ. P. 30(b)(6) witness), 12-13, 27-29 (explaining how all interactions between Alessi and Koenig and Miles Bauer went during the time period in which the HOA Sale occurred).)

BANA was aware that Alessi and Koenig's policy in 2012 was to reject any checks sent by Miles Bauer in an attempt to pay off the superpriority portion of homeowners' association liens. (ECF No. 150-23 at 23.) Similarly, Rock Jung, a Miles Bauer attorney who sent many payoff demands to Alessi and Koenig on BANA's behalf, was aware that Alessi and Koenig's policy in 2012 was to reject any checks he sent in in an attempt to pay off the superpriority portion of homeowners' association liens—indeed, Alessi and Koenig sent him a general letter saying as much. (*Id.* at 34, 39 ("From what I recall, this was a letter from Alessi and Koenig that was a blanket general letter, if you will, just stating that they will not be able to accept the payment that we made to satisfy the super priority lien because it only included assessments and not their additional fees and costs and that they would actually be losing money or the HOA would be losing money if they only accepted the nine months' worth of assessments that was tendered.").)

River Glider filed for Chapter 11 bankruptcy later in 2012. (ECF No. 150-25 at 4.) Mr. Haddad filed the bankruptcy petition on River Glider's behalf. (*Id.*) Mr. Haddad listed the Property as an asset on one of its bankruptcy schedules, noting it was subject to a $208,000.00 secured claim. (*Id.* at 11.) Mr. Haddad otherwise stated in the schedules that CMG Mortgage had a first mortgage on the Property. (*Id.* at 15.) The schedules conclude with Mr. Haddad's signature affirming his agreement with this statement: "I, the Registered

3

Agent of the corporation named as debtor in this case, declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of 17 sheets, and that they are true and correct to the best of my knowledge, information, and belief." (*Id.* at 26.)

Later in that same bankruptcy proceeding, Mr. Haddad filed a motion to use cash collateral where he stated that he acquired title to the properties at issue in that case—including the Property—"subject to the first mortgage lien on the properties." (ECF No. 150-26 at 3.) The bankruptcy court granted that motion. (ECF No. 150-27.) River Glider also stated in two subsequent filings in that bankruptcy proceeding that the Property was encumbered by the DOT. (ECF Nos. 150-28 at 3, 150-29 at 10.)

## III. DISCUSSION

While Nationstar raises several arguments in its Motion, the Court is alternatively persuaded by its excused tender and judicial estoppel arguments, so the Court includes only its analysis of those two arguments below.

### A. Excused Tender

In pertinent part, Nationstar argues that the HOA Sale was void under the excused tender doctrine because Alessi and Koenig had a known policy of rejecting all tender attempts at the time of the HOA Sale that BANA was aware of.[3] (ECF Nos. 150 at 15-17, 156 at 3.) River Glider counters that Nationstar's argument is unsupported and overinclusive because it means that any HOA Sale conducted by Alessi and Koenig during the period where Alessi and Koenig had a policy of rejecting all tender offers was invalid. (ECF No. 153 at 9-12.) The Court agrees with Nationstar.

///

---

[3]In reply Nationstar presents its excused tender argument within the *Shadow Canyon* framework for equitable relief (ECF No. 156 at 2-6), but presents it as a distinct legal argument in its Motion (ECF No. 150 at 15-17). The Court does not analyze the excused tender argument within the *Shadow Canyon* framework because "the voiding of the foreclosure sale as to the superpriority portion of the lien is ultimately the result of the operation of law and not equitable relief." *Bank of Am., N.A. v. Bernini Dr Tr.*, Case No. 2:16-cv-00474-APG-BNW, 2020 WL 1044005, at *2 (D. Nev. Mar. 3, 2020), *aff'd sub nom. Bank of Am., N.A. v. Alessi & Koenig, LLC*, 840 F. App'x 217 (9th Cir. 2021) ("*Bernini Dr.*") (citation omitted).

The parties—and the Court—agree that the excused tender doctrine applies when two conditions are satisfied: (1) the homeowners' association agent had a "known policy of rejecting any payment for less than the full lien amount[;]" and (2) "Miles Bauer and the Bank had knowledge of this business practice[.]" *7510 Perla Del Mar Ave Tr. v. Bank of Am., N.A.*, 458 P.3d 348, 351 (Nev. 2020). (*See also* ECF Nos. 150 at 15, 153 at 10, 156 at 3 (agreeing this is the test).)

Both conditions are satisfied here. At the time of the HOA Sale, Alessi and Koenig had a policy of rejecting any tender offers that did not include all of the fees that Alessi and Koenig added on to superpriority liens. (ECF No. 150-21 at 2 (including the case caption for this case and identifying Mr. Alessi as Alessi and Koenig's Fed. R. Civ. P. 30(b)(6) witness), 12-13, 27-29 (explaining how all interactions between Alessi and Koenig and Miles Bauer went during the time period in which the HOA Sale occurred).) Miles Bauer and BANA were aware of this policy at the time of the HOA Sale. (ECF No. 150-23 at 23, 34, 39.) The HOA Sale accordingly did not extinguish the DOT. *See Perla Del Mar*, 458 P.3d at 351-52; *see also Bank of Am., N.A. v. Lakeview Owners' Ass'n*, Case No. 2:16-cv-00635-APG-BNW, 2020 WL 4586861, at *2 (D. Nev. Aug. 7, 2020), *aff'd*, Case No. 20-16626, 2021 WL 5359580 (9th Cir. Nov. 17, 2021) (applying *Perla Del Mar* and finding that a deed of trust was not extinguished by a homeowners' association foreclosure sale); *Bernini Dr.*, 2020 WL 1044005, at *2 (same).

River Glider's argument that the evidence Nationstar proffered to support its argument on this point is not specifically about the Property is unpersuasive because "evidence from other matters can[] be used to support a position in a different matter." *U.S. Bank Nat'l Ass'n, Tr. to Wachovia Bank, N.A. v. SFR Invs. Pool 1, LLC*, 464 P.3d 125 (Table), 2020 WL 3003017, at *1 (Nev. 2020); *see also id.* ("We conclude that under these circumstances, this evidence is sufficient to demonstrate that NAS had a 'known policy of reject[ion]' sufficient to excuse formal tender under *7510 Perla Del Mar Avenue Trust*."). And River Glider's argument that it is a bona fide purchaser (ECF No. 153 at 6-9) is irrelevant because "status as a [bona fide purchaser] is irrelevant when a defect in the

foreclosure proceeding renders the sale void."[4] *Bernini Dr.*, 2020 WL 1044005, at *2 (citation omitted).

### B.     Judicial Estoppel

Nationstar also argues that River Glider is judicially estopped from taking the position that the HOA Sale extinguished the DOT in this case because it took the position—to its benefit—that the DOT continued to encumber the Property in its bankruptcy proceeding. (ECF Nos. 150 at 17-20, 156 at 4-6.) River Glider counters that it did not make any binding factual statements in its bankruptcy petition because it is relatively easy to amend bankruptcy filings and it filed its bankruptcy petition before the Nevada Supreme Court issued its decision in *SFR Invs. Pool 1 v. U.S. Bank*, 334 P.3d 408, 409 (Nev. 2014), *holding modified by Saticoy Bay LLC Series 350 Durango 104 v. Wells Fargo Home Mortg., a Div. of Wells Fargo Bank, N.A.*, 388 P.3d 970 (Nev. 2017) finding that NRS § 116.3116 creates a "true priority lien such that its foreclosure extinguishes a first deed of trust on the property[,]" so River Glider's statements in its bankruptcy petition that it owned the Property subject to the DOT were based on its understanding at the time that later turned out to be incorrect. (ECF No. 153 at 12-16.) The Court again agrees with Nationstar.

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position."[5] *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782

---

[4]River Glider is not a bona fide purchaser in any event. The DOT was recorded. (ECF No. 150-1 at 2 (including stamp from Clark County Recorder indicating it was recorded).) And the DOT includes a footer indicating it is a 'Nevada – Single Family – Fannie Mae/Freddy Mac UNIFORM INTEREST WITH MERS.' (*Id.*) The DOT further includes the provision that it may be "sold one or more times without prior notice to Borrower.' (*Id.* at 14; *see also id.* at 14-15.) River Gilder thus had record notice of the DOT and is accordingly not a bona fide purchaser. *See Nationstar Mortg. LLC v. Travertine Lane Tr.*, Case No. 19-17197, 2022 WL 1486830, at *2 (9th Cir. May 11, 2022) (finding that the defendant had record notice of a deed of trust and was accordingly not a bona fide purchaser when these same three conditions existed).

[5]"Under Nevada law, courts retain discretion to set aside a foreclosure sale if two circumstances are present: (1) an unreasonably low sales price, and (2) fraud, unfairness,

6

(9th Cir. 2001) (citations omitted). Courts invoke the doctrine of judicial estoppel "not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts."' *Id.* (citations omitted).

The evidence before the Court shows that River Glider took clearly inconsistent positions before the bankruptcy court and this Court. River Glider took the position with the bankruptcy court that a first mortgage encumbered the Property in its bankruptcy petition, and has taken the position before this Court that it owns the Property free and clear of the DOT. (ECF No. 150-25 at 4, 11, 15; ECF No. 150-26 at 3; ECF No. 150-28 at 3; ECF No. 150-29 at 10 (stating to the bankruptcy court that its interest in the Property was subject to a security interest.).) River Glider gained an unfair advantage from that position both because it was able to maintain the bankruptcy in the first place, and more specifically because the bankruptcy court granted its motion to use cash collateral—rent it was collecting on the Property. (ECF No. 150-27.) In contrast, River Glider has been arguing throughout years of litigation in this case that the HOA Sale extinguished the DOT so that it may own the Property free and clear of the DOT. Moreover, Mr. Haddad was aware of the possibility of litigation with banks like Nationstar each time he purchased a property at sales like the HOA Sale. (ECF No. 150-16 at 22.) Indeed, he said, "[i]f it's an NRS 116 sale and there happens to be a deed of trust, automatically I'd be inclined to bid less because of potential litigation costs." (*Id.* at 17.) This fatally undermines River Glider's

---

or oppression that affected the sale." *U.S. Bank, N.A., Tr. for Banc of Am. Funding Corp. Mortg. Pass-Through Certificates, Series 2005-F v. White Horse Ests. Homeowners Ass'n*, 987 F.3d 858, 863 (9th Cir. 2021) ("*White Horse*") (citing *Nationstar Mortg., LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, ("*Shadow Canyon*") 405 P.3d 641, 648 (Nev. 2017)). Here, there is no question the sales price was unreasonably low, as Early Vista purchased the Property for about seven percent of fair market value. (*Compare* ECF No. 150-13 *with* ECF No. 150-14.) "Because of that low purchase price [of 8% fair market value], [Nationstar] must produce only slight evidence of fraud, unfairness, or oppression that affected the sale." *White Horse*, 987 F.3d at 864. The Court accordingly moves straight to step two of the *Shadow Canyon* analysis, evaluating whether Nationstar's judicial estoppel argument constitutes the sort of slight unfairness required to set the HOA Sale aside.

7

argument that it "did not have the benefit of the *SFR* Decision prior to 2014." (ECF No. 153 at 14.) And more broadly, both elements of judicial estoppel are accordingly satisfied. *See Hamilton*, 270 F.3d at 782 (explaining the two elements).

The Court will not let River Glider play fast and loose. The Court alternatively uses its equitable power to set aside the HOA Sale under the judicial estoppel doctrine.

## IV.     CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Nationstar's motion for summary judgment (ECF No. 148) is granted.

It is further ordered that the HOA Sale did not extinguish Nationstar's DOT on the Property.

It is further ordered that, considering the Court's finding directly above, Nationstar's claims against the Sahara Sunrise Homeowners Association are dismissed as moot.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 3rd Day of August 2023.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE